Before we begin our proceedings today, I have a matter to take care of that is very important and dear to me. And for that purpose, I'll turn it over to Judge Moore to turn it over to me, I guess. Go ahead. You may proceed. I think Judge Proce has a motion she wants to make. I move the admission of Adam Meyer-Goy, who is a member of the Bar in good standing of the highest courts of New York and the Court of Federal Claims, and Ali Mogidi, who is a member of the Bar in good standing of the highest court of California, and Jason Lee Romwell, who is a member of the Bar in good standing of the highest court of California. I have knowledge of their credentials, and I'm satisfied that they possess the necessary qualifications. And before we go on to swear them in, I'd just like to say on a personal note that these times have been bittersweet for me. The bad news is that each of these three individuals is moving on in the coming months, and I'll miss them terribly. The good news is that these individuals are moving on to what I believe will be productive, challenging, and successful careers in the law, and I know they will do me proud as both lawyers and citizens. And families and close friends are here today to join them, and since these clerks have become members of my family as well, I share in your pride for their accomplishments and to your expectations for their successful futures, both personally and professionally. They know I am confident that they will always be members and a special part of our court family and our chamber's family, and we've shared some great moments this year in learning the law together and in making limited, minimal changes in the law, and each day they did their best to get it right, and it's truly been a privilege and an honor and a pleasure to work with them each and every day. So with that, I make the motion. Absent objection, the motion will be granted. Let me add that I have no doubt that you will be members of the bar in good standing and will conduct yourself at the highest level of quality and professionalism before the court because you had the privilege of clerking for a very, very good judge. And I know you don't get the chance to say anything here, so I'll say that for you. You've had a great experience, no doubt, and you're very fortunate to have clerked for Judge Press, and I'm sure that you will take quite a bit away from it. So with that, I invite the clerk to swear you in. I swear you right in. I do, I do. Congratulations, and welcome to the bar of the United States Court of Appeals. Congratulations, and now you can get back to work. First case for argument this morning is 2011-1355, Raylon v. Complus Theta, etc. Now we have three folks splitting the time, and we're going to set the clock for each of you individually, and if you don't abide by your rules, then your colleagues will be penalized. So please proceed. I understand. Thank you, Your Honor. May it please the court. From the day these cases were filed in the summer of 2009, they were frivolous. I intend to use my six minutes today to convince this court that Judge Davis abused his discretion in not granting Rule 11 sanctions for two reasons. First, Judge Davis found that Raylon's arguments with regard to the pivotally mounted display were not objectively unreasonable. And secondly, Judge Davis relied on subjective issues in denying Rule 11 sanctions when under Fifth Circuit law it is an objective analysis that should be made. But even if you prevail on persuading us that he relied on the wrong factors, subjective versus objective, doesn't that require a remand rather than a straight-out reversal? And you're speaking here. I understand that a straight-out reversal would be fair to Rule 11. We are, Your Honor, seeking a straight-out reversal. And the reason is that all a remand on these issues will get us is just prolonging the case. These issues are straightforward. There's no real factual dispute. All you need is the accused product in one hand and the patent in the other, and anyone can see that these are objectively baseless claims. You said there's no factual dispute, but any sort of sanction, like Rule 11, is the discretion of the district court. And should the district court have the opportunity to decide how to exercise that discretion so long as they do so in compliance with the law? Even if you're successful here in showing he didn't comply with the law and therefore erred in the way he exercised the discretion, that doesn't mean we should take it over for him, does it? Well, the court certainly can if it so chooses. In fact, in the Juden case in this court back in 1997, it did exactly that. The district court found there was no Rule 11 violation, and the panel found no, there most certainly was a Rule 11 violation, and did remand for the determination of the sanction. But certainly where it's so clear and the record is so clear, there's nothing preventing this court from simply instructing that there was a Rule 11 violation. If you think there was a Rule 11 violation, do you believe that Rule 11 is mandatory and automatically requires the imposition of sanctions, or do you believe it's at the discretion of the district court to decide whether sanctions are appropriate? Well, those are two different questions, Your Honor. The first question is whether or not if Rule 11 is violated, there's a violation, which is the question we believe is before this court. The second question is if there is a violation, what's the sanction? And the rule changed in 1993, so it gives the district judges more leeway and says they may impose sanctions. So if there's a Rule 11 violation here, if this court finds there's a Rule 11 violation, and reverses that determination, it does need to go back to the district court for a determination of which sanctions are appropriate. So it's discretionary in response to your question. Can I move on to Draymond? Yeah, you mentioned the record before us, and I brought the record here that was filed before this court. There's approximately 11 volumes, and if I put this stack on top of this one, you can imagine how high that would be. And I think that's the biggest record I've ever seen submitted before this court during my time here. Who's responsible for this? How did that come about? Raylon. In fact, Your Honor, I'll refer you to footnote 1 in our reply brief. Raylon cited in groups more than 1,000 pages, hundreds of pages, and we immediately sent them a letter saying, look, Rule 30 of the Federal Circuit says you can't do that. And we cited them a case where the Federal Circuit said that's totally improper. Raylon agreed to pay costs so we didn't have to file a motion, but we tried to get that to be content to that size, but we're unable to. Can I ask you about 285 just briefly? Because that, it seems to me, is a really harder case to make for a remand, even if there was error on the Rule 11 section, for not giving a remand, for awarding under 285, concluding this is an exceptional case. And that's simply because you've got the two factors, right, objective and subjective. And the district court did make findings on the subjective factors. So why on that basis alone can we not say, well, okay, on 285 he got it right? Well, this court has held in LTCH and also more recently in the MARTEC decision where you have such an objectively baseless case, the subjective factors, they flow from that. And you can infer bad faith when it's subjectively. You can infer it in the absence of any evidence one way or the other, but you can't infer it to overcome what he found. He found expressly there was no bad faith. And that was an abuse of discretion, Your Honor. For example, respectfully, we think that was an abuse of discretion. This entire case is based on this one argument. This is the Casio M53 product. It's representative of all products for this display issue. And I assume it's in the record. This was used at the district court. It was not marked as an exhibit, but there are certainly pictures, and there's no objection by Raylon. Every one of these claims has the same simple language, a display pivotally mounted on the housing. Raylon brought all these cases, and they wouldn't even exist, but for this argument that any display that can move relative to the viewer is pivotally mounted to the housing. So Raylon argued that the user can hold the whole thing and just do this, and there's your pivotally mounted display. That is totally and completely perfect. And I understand that district courts have discretion. I do understand that, and I respect that. But there has to be a limit. There has to be a limit. Briefly on the 285, I have 20 seconds, so I'm not going to get anything else besides a recitation of the statute. If there are any specific questions, more questions, I'm happy to take them. Otherwise, I'll defer to counsel. That's fine. Thank you. Thank you. Mr. Seller. Your Honor, may it please the court, my name is Mitchell Seller, and I represent Symbol Technologies. I'd like to touch briefly on an independent basis that we've... Printer. The printer in the housing. Exactly, Your Honor. Well, I figured since this is pivotable mounting, I'm now a printer too, aren't I? Under Raylon's theory, you could be a printer inside said housing, and just to continue the show and tell for purposes of discussion, this is a representative of the accused Symbol Products. All of the claims in the patent recite a housing, and every structural limitation is recited with respect to said housing, including that there be a printer mounted inside of said housing. Now, the district court didn't even touch on the argument of the printer, on the issue of the printer. That's correct, Your Honor. Why? Do you think he missed it? Do you think he considered it and just didn't find it warranted, even a discussion? What's your take on what went down? I really can't speculate on what was in the district court's mind. But you clearly made this argument. But we clearly made this argument. It was the first argument made in our 12C motion and Rule 11 motion. And it's unique to Symbol. And it is unique to Symbol, Your Honor. But we believe it provides a separate basis to find Rule 11 sanctions with respect to Raylon because... With respect to... With respect to all of Symbol's products. Symbol Products, right? So what you want is for the district court to differentiate and say even if pivotably mounted was a reasonable infringement argument, there is no basis whatsoever for the printer. And so at least Symbol should have gotten cover. It's attorney's fees, right? That's what you want. Yes, Your Honor, both for Rule 11 and Section 235. But if we agree with your friends, then do we even need to reach the issue, question of printer? I mean, if we think... I mean, the rest, the heft of the other argument is on the claim construction and the pivot. Is there a need to reach the printer question if we agree with your side on the pivot question and the objective unreasonableness of that position? No, Your Honor, with the possible exception of the fact that the printer argument, with respect to a number of other arguments, goes to the weight of looking at the subjective unreasonableness and inferring bad faith. This is not simply one frivolous claim construction made by Raylon. So when you talk about subject, you're bringing us back to the 285 question, right? That's correct, Your Honor. We know there's a difference between stupidity and bad faith, right? I mean, maybe they just overlooked the fact that you didn't have a printer. Maybe they were negligent in their review. But that doesn't amount to bad faith. Well, Your Honor, bad faith can be inferred if the claims are so far beyond the line, so totally unsupported by any reasonable application of the rules of this court for claim construction, any reasonable dispute... Wouldn't that be a frivolous claim?  but it also provides a basis to infer that the attorney bringing the claims knew or should have known that the case was false. Is bad faith more than just asserting a frivolous claim? Well, in this case, Your Honor, I believe that the two are the same. These cases are not simply bad faith, because you can have bad faith with respect to other aspects of the case that may not result to a frivolous claim, for example, a discovery. Let me see if I can help you a little bit. Would your argument be bolstered by the fact that you gave all the proper Rule 11 notices, and that when, to the extent that they overlooked it, as I suggested could possibly have happened or something like that, you gave them the notice of all of these issues and they had an opportunity to withdraw and they refused to do it, the complaint against your client and continued to prosecute it? Absolutely, Your Honor. We gave every opportunity for Raelon to withdraw. Absolutely, Your Honor. I only have a few seconds left, so unless you have any other questions, I will turn the podium to my co-counsel. Thank you. Mr. Emerson? Thank you, Your Honor. May it please the Court. I represent Complus Data Innovations, unlike Cassidy. You're a small company with only a few employees. It got stocked for hundreds and plus thousand dollars, right? Yes, ma'am. If you have nothing else, I'll have a seat. Here's my question. Is that a relative factor in the Rule 11 analysis? No, but I think... No, that's okay. But do you think, certainly in preliminary injunction, we balance the hardships, right? Between the plaintiff and the defendant and being a small company would matter. Do you think it's something that the District Court erred in not articulating that he considered it or something like that? No, Your Honor, I don't. I raise that to emphasize the point that we as lawyers are gatekeepers and Rule 11 is there to enforce our duty to the Court as gatekeepers. And in this case, it has terrible consequences for a small company like Complus. We spent $150,000 to get to a successful conclusion at the District Court. Which is pretty inexpensive as far as patent cases go. Exactly, Your Honor. But it's a small fortune. To our company, it's a small fortune. And to go back to the point you made a few minutes ago, we, Complus and Casio, both filed summary judgment motions well before this case really got started. I mean, they filed theirs in October, I believe, just after they answered. We filed in January, just after we answered, before there was even a case management conference. So to the extent that it simply got past them, that there was no pivotally mounted display screen here, they certainly knew about it at least in October, if not then, on January 1st of 2010. So I don't think it's something that simply got past them. We gave the Court every opportunity, and we gave them every opportunity to get rid of this case early on. I guess I'd like to hear more on it, which is if we were to agree that there is a Rule 11 violation here, would we need to reach 285? Is there anything you can get from 285 that you couldn't get through the Rule 11? Is it redundant? Do we have to reach it? I don't believe so, Your Honor, no. We don't have to reach it. There are different standards there, and we can certainly reach a different conclusion as to both. We respectfully submit that 285 is met here. This is an exceptional case, and also that counsel did not perform his duties as the gatekeeper to this Court. Why don't we hear from the other side? We've got a couple minutes left to rebuttal. Mr. Hemingway? Yes, Your Honor. This is only one of you on this case. May it please the Court, I'm Scott Hemingway. I represent Raylon in this matter. First, Judge Ray, the appendix is our responsibility, but it was the result of a request for de novo review. We didn't know how this Court was going to perform a de novo review of everything the District Court considered without giving you everything the District Court considered, including the printer issues and the other issues that were before the Court that the Court considered. Now, the Court didn't itemize its rulings and specific findings as far as in its orders, but in its orders it said it considered everything that was submitted to it and argued at the hearing. Do I have this confused with another case, or does that 8,000-page record here that's before us include manuals that are in Japanese and in German? They include the Rule 11 response letters, which I think is relevant to our showing the extensive efforts that we took to respond to the Rule 11 issues. And as part of that were our contentions, the support for our claims, the support for our infringement analysis, and so forth. And it includes, if you look at footnotes 2 through 9 on our briefing pages 4 through 7, we try to break out the appendix into specific base-numbered segments which show exactly where our support was and where the briefing was. So I apologize for the length of it, Your Honor, but the reason for it was the de novo review request, which we understood the appellants were asking for, and which is a little bit more complicated now that we have the Highmark case. We do take very seriously the record that's submitted before this court in connection with the case, and we assume that it's submitted in connection with issues that are before the court. But this record has a lot of material that's just duplicated. It deals with material that is not addressed by these issues that are before us. There's just a lot there. And it's just... It's a drain of resources, not only on you and your opponents, but also on the court, and our clerks have to go through all this and read all this, and I just found that to be somewhat daunting. And that's why we specified specific appendix numbers and footnotes. Normally that's what happens, and that's what's submitted to the court, and not everything else. But we wanted to make sure that this court knew that Judge Davis did consider all the issues, including the printer issues, including the slot issues. All those issues were beforehand. In fact, all the same arguments that this court's being confronted with were presented to Judge Davis, and in the first line of both of his orders, on Section 285 and Rule 11, he says, I considered all this. I considered all these arguments, including the printer issue, including the slot issue. No, he doesn't say, I considered the printer issue. He didn't say... He never mentions the printer issue anywhere in his opinion. He doesn't itemize it, Your Honor, but I believe the first line says, I, Judge Davis, looked at everything, and we take him at his word that he looked at those issues. He decided based on the screen issue, and never got to the printer issue. He made specific findings about that, Your Honor, but it's our understanding, and we read his orders, that he looked at all the briefings, and he asked during the hearing, was there anything else? Is there any other issues? Well, he says, having considered the party's written submissions and oral arguments, is that, in your view, sufficient? I mean, I know our cases don't require that a district court or a court that we're reviewing go through every single argument, but there seem to me to be two extremes, and why can't we construe this as being at the other extreme, and not analyzing any of the... It's our understanding that when he says he considered all the arguments, all the briefing, and was at the hearing, and he heard the hearing arguments, and he asked, was there anything else, we take him at his word that he did. Okay, well, then why don't we forget about  and just have us review it, which is what we're supposed to be doing. So why don't you tell me why it is a reasonable infringement contention for you to maintain claims against Simbel that require a printer in the housing for every single claim when they have no printer in the housing. Your Honor, the claim required a housing, a housing, and this is covered in footnote 35 on page 46 of our brief. We cited federal circuit authority for the term, a housing, can mean, it's not restricted to one and only one housing. It can be multiple housings. It can be, as long as the printer is in the housing. You're talking about footnote 35 on page 46? I believe that's... One case that I cited here is a non-presidential non-public case. This is an absurd position. Your Honor, it's the exact position that was taken in this case, and... I understand that. That's your problem. Well, no, but I... I will tell you that we researched the case, we researched this issue, and this is what we found, was that it had to be a housing. Was that restricted to one and only one housing? No, it could have been segregated, it could have been multiple housings. Your Honor, even if we don't prevail on literal infringement, we have an issue about whether there's equivalence. So we have a claim, Your Honor. The claim was there, it was a viable claim. In fact, the printer, the person that manufactures that printer right there, believed that this was an objectively reasonable case and settled out of this case. Well, maybe they settled out because they found it more economically expedient to do so, than to continue with a litigation that a district court found stretched the limits a reason. Your Honor, I understand that as a statement from Judge Davis, he said it pushed the bounds, but it did not cross that boundary line. Right. And the only real reason he articulated for that is the discussion on what, I guess I'm interested if you concede, is really an analysis of the objective rather than objective factors. I think he considered all the objective factors. You can't quibble on what he considered when we don't know. The question is what he articulated as being his rationale. And you agree, do you not, that with respect to his articulated rationale, it's 99% the analysis of a subjective rather than an objective factor. I would submit to Your Honor that his extraneous comments at the hearing were meant to send a message to the Bar about a concern that he had. And he specifically itemized cases that he believed were a problem. Well, I'm looking at his written analysis, not what he said at the hearing, right? And I think that that articulates it in written form, was that he had a concern about certain cases in front of his court, and he said this was not one of those cases, which was a settlement for undervalue. But that whole analysis dealt with the subjective, the state of mind, right, not the objective. Those extraneous comments did deal with the state of mind, Your Honor, yes. Okay, but what is there in the opinion that goes to the analysis of the objectively reasonable standard? Well, he does address it with respect to the display mounting issue, and I believe that he encompasses the entire arguments, every argument that's made, and says, I considered all the arguments, all the arguments that they're presenting here to this court were the arguments that he had in front of him, when he said, I don't find this to be an objectively unreasonable case. Your printer housing argument, the claim, claim one says, A housing, having an interior, talks about the housing must have an elongated slot, it talks about all kinds of other things related to the housing. It says, a printer assembly being mounted in said housing. What does said mean when it's used in a patent? It means A housing. No, it does not mean A housing. What does said mean when it's used in a patent claim? Well, it means, it refers, it's an antecedent basis. Correct. So which housing could it mean? Any housing? No. No, only the claimed housing, correct? It could use the word said. Your Honor, and it's our interpretation that could be one housing or one or more housings, as long as it's enclosed in A housing. The same housing, it has to be the same housing that has the slot, the elongated slot, presenting and receiving identical, right? I don't mean to argue with you, Your Honor. I just, I may just disagree with your interpretation of A housing meaning one and only. I'm not disagreeing with you on the word A housing. I'm disagreeing with you on the word said housing. Said housing is the only word used with regard to the printer. Said housing means the one and only housing previously claimed. And what we would have pointed to, and what we did point to in our contentions were both those housings. And those housings satisfy the said housing. No, you can't. You can't. You can't possibly. The claim says A housing having an interior, said housing having elongated slots. The said housing has the printer. How can you then point to a separate housing that doesn't have the elongated slot and all the other interior features and say that's the housing? It can't be said housing. It doesn't meet the claim limitation. Respectfully, Your Honor, we did contend that now whether after we got the claim construction, whether we amended our contentions consistent with local rules, which require early contentions to be submitted, and then the claim construction comes out and we get a claim construction, we have 50 days under local rules to amend our claim construction or our contentions to provide the defendants with our final contentions. And we were just abiding by the local rules as far as progression of the case up through a claim construction hearing. Rule 11 in the advisory committee note to the 1993 amendments to Rule 11 says, it emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable and by generally providing protection against sanctions if they withdraw or correct contentions after a violation has been called to their attention. Why did you not, at some point during this process, withdraw your complaint as applied to symbol in light of the printer issue? Your Honor, we were going through a claim construction until we get the claim construction from the court. What construction of said housing did you need to still get before you could realize that they had no printer inside the housing with the elongated slot? And I believe what we said was one or more housings that enclosed both the printer assembly and the other mechanics. I'm not sure exactly about that, Your Honor, but I believe that if we had gotten that construction then we would have had literal infringement. If we didn't get that construction then we would have 50 days under the local rules to amend the construction. Let's go to the other issue that the court actually did review and consider and that's with respect to whether you have a screen that's pivotally mounted. And your assertion was that because you can get these devices with your hand, move them up and down, that that's pivotally mounted. That may be true if you're talking about pivotally mounted on an arm or a hand, but the claim is... So how is that plausible? I'm having a hard time understanding how you even get past the filing requirements on something like that. Let me explain, Your Honor. The invention, that claim construction is supported by multiple parts of the specification where it talks about displaying text that's electronically transmitted to the officer at the scene. Also printing out ticket information that's displayed on the display and allowing the officer to keep an eye on the suspect while having the display screen available to him, so keeping eye contact with both the screen and the suspect. Those elements, or those attributes of the invention support the construction, as well as we had experts... Are any of those in the claim? Yes, well, Your Honor, I believe that's how the pivotal mounting... I mean, you're describing the use of the device, but that's not the claim. The claim says it's pivotally mounted. Your Honor, we offered the court a broad claim construction, but we don't believe it was over the line, and we had experts. We had two experts. One was an expert in LCD technology who had 60 U.S. patents, and another expert in patent law with over 40 years of patent experience. And why is his testimony relevant? The Sundance case says expressly that patent lawyers are not permitted to testify on issues from the vantage point of one of skill in the art. Claim construction is determined by one of skill in the art. Sundance says it is expressly prohibited to have a patent attorney testify on such matters. So why is that relevant? Well, it's relevant to our good faith basis for asserting this claim is that we went to... We didn't just rely on attorneys... He's not one of skill in the art. Why are you relying on someone not one of skill in the art  The technical person was definitely skilled in the art, Your Honor. The patent lawyer was a former patent examiner... You offered the patent lawyer as somebody who's skilled in the art to testify. Well, I think we... And that's contrary to our precedent. I understand that issue, Your Honor, and I'm not saying that he's skilled in the art. I'm saying simply that we went in both directions, technical and patent directions, to look for... to see whether this was reasonable or not, whether this was objectively reasonable. And those two parties, both of them, came back and said, yes, it looks like that's fine. It's a broad scope, but it's not over the line. And that's exactly what Judge Davis came back with and said, look, it's a broad claim construction. I don't agree with it. You can appeal it if you wish, but I don't think it's over the line. Actually, he's a nice Southern man who said it stretches the bounds of reasonableness. Yes, Your Honor. He did say it stretches the bounds of reasonableness, but it did not cross the line. And we believe it didn't cross the line either, but we didn't just rely on our own analysis of that. We relied on two experts' analysis of that. And Judge Davis is not... he's not what I would call a novice patent judge. He's got one of the busiest patent dockets in the nation. He's got hundreds of patent cases, and this court's reviewed... and he's not adverse to sanctioning attorneys. This court in the Clear Value v. Pearlview case reviewed sanctions that he issued. He, you know, he knows sanctions, when a sanctionable conduct, when he sees it. He did not see it in this instance. And it's our position that this court should defer to his judgment on this issue and affirm his decision. We have your argument. Thank you. Mr. Hemingway went over for a minute, so if you've got a couple minutes left, we'll add one to that, an additional minute, if you need it. Thank you, Your Honor. Actually, I confer with my colleagues, and we don't feel we need rebuttal time, but if you have any questions, we're happy to answer them. I think we have the argument. Thank you very much.